**Case No. 26-60222**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

In the Matter of United Furniture Industries, Incorporated,

Debtor

---

Toria Neal; Kalvin Hogan; James Pugh, Sheriff; David Belford; Separate Property Trust Created by David Belford; David A. Belford Irrevocable Trust; Stage Capital, L.L.C.; Willie Poe,

Appellees

v.

Derek A. Henderson,

Appellant

---

On Appeal from the United States District Court
for the Northern District of Mississippi
1:25-CV-94-SA

# <u>APPELLANT'S BRIEF</u>

Douglas C. Noble, MS Bar No. 10526
W. Thomas McCraney, III, MS Bar No. 10171
MCCRANEY MONTAGNET QUIN & NOBLE, PLLC
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Telephone: (601) 707-5725
Facsimile: (601) 510-2939
dnoble@mmqnlaw.com
tmccraney@mmqnlaw.com

Anna Claire Henderson, MS Bar No. 106230
1765-1 Lelia Drive, Suite 103
Jackson, Mississippi 39216
Email: annaclaire@derekhendersonlaw.com

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Derek A. Henderson, Liquidating Trustee – Appellant;[1]
2. Douglas C. Noble, Attorney for Liquidating Trustee – Appellant;
3. W. Thomas McCraney, III, Attorney for Liquidating Trustee – Appellant;
4. Anna Claire Henderson, Attorney for Liquidating Trustee – Appellant;
5. Michael Coury, Attorney for Attorney for Stage Capital, LLC, David A. Belford, individually and as the trustee for the Separate Property Trust Created by David A. Belford and the David A. Belford Irrevocable Trust – Appellee;
6. Ryan Burgett, Attorney for Attorney for Stage Capital, LLC, David A. Belford, individually and as the trustee for the Separate Property Trust Created by David A. Belford and the David A. Belford Irrevocable Trust – Appellee;
7. Geoffrey Trotier, Attorney for Attorney for Stage Capital, LLC, David A. Belford, individually and as the trustee for the Separate Property Trust Created by David A. Belford and the David A. Belford Irrevocable Trust – Appellee;
8. Casey L. Lott, Attorney for the Appellee;
9. Philip C. Hearn, Attorney for the Appellee;
10. Mike Farrell, Attorney for the Appellee;

[1] As a result of the underlying bankruptcy proceeding and the court approved Plan of Liquidation, the assets of United Furniture Industries, Inc. and its affiliates are now the property of the UFI Liquidating Trust, which is the successor to and assignee of UFI.

11. William “Jack” Simpson, Attorney for the Appellee;
12. Toria Neal – Appellee;
13. Kalvin Hogan –Appellee;
14. James Pugh – Appellee;
15. David Belford – Interested party;
16. Separate Property Trust Created by David Belford – Interested party;
17. David A. Belford Irrevocable Trust – Interested party;
18. Stage Capital, L.L.C. – Interested party; and
19. Willie Poe – Interested party.

**RESPECTFULLY SUMBMITTED** this the 16th day of June, 2026.

**DEREK A. HENDERSON**
**Liquidating Trustee**

By: */s/ W. Thomas McCraney, III*
W. Thomas McCraney, III

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully submits that oral argument would assist in the decisional process.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......... ii

STATEMENT REGARDING ORAL ARGUMENT .......... iv

TABLE OF CONTENTS .......... v

TABLE OF AUTHORITIES .......... vi

JURISDICTIONAL STATEMENT .......... 1

STATEMENT OF THE ISSUES .......... 2

STATEMENT OF THE CASE .......... 3

A. UFI's Shut-Down and Bankruptcy .......... 3

B. WARN Act Litigation .......... 5

SUMMARY OF THE ARGUMENT .......... 10

ARGUMENT .......... 12

A. The Priority for “Earned” Wages and Benefits under § 507(a)(4) of the Bankruptcy Code .......... 12

1. The Plain and Ordinary Meaning of “Earned Wages” .......... 14

2. Priorities Must be "Tightly Construed". .......... 14

B. The Remedy Provided by the WARN Act .......... 15

C. WARN Damages Are Not Entitled to Priority under § 507(a)(4) .......... 17

CONCLUSION .......... 23

CERTIFICATE OF SERVICE .......... 24

CERTIFICATE OF COMPLIANCE .......... 25

# TABLE OF AUTHORITIES

**Cases................................................................................................Page(s)**

In re Bennett
237 B.R. 918 (N.D. Bankr. Tex. 1999) ........................................................ 22

*In re Cargo, Inc.*,
138 B.R. 923 (Bankr. N.D. Iowa 1992)................................18, 19, 20, 21, 22

*Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dept. Stores, Inc.*,
15 F.3d 1275 (5th Cir. 1994)............................................................12, 15, 16, 20

*Carrieri v. Jobs.com, Inc.*,
393 F.3d 508 (5th Cir. 2004)........................................................................14

*In re Creative Hairdressers, Inc.*,
637 B.R. 561 (D. Md. Bankr. 2021), aff'd, *Olsen v. Nesse*
2022 WL 17404968 at *3-4 (D. Md.2022)...................................................14, 21

*Czyzewski v. Jevic Holding Corp.*
580 U.S. 451 (2017) ........................................................................ 19, 20

*In re Deepwater Horizon;*
934 F.3d 434 (5th Cir. 2019) .......................................................................3

*In re First Mangus Financial Corp.*
390 B.R. 667 (D. Az. Bankr. 2008) ...................................................................13

*Fleming v. Bayou Steel BD Holdings II, LLC*
83 F.3d 278 (5th Cir. 2023)........................................................................16, 22

*Howard Delivery Service, Inc. v. Zurich American Ins. Co.*,
547 U.S. 651 (2006)........................................................................14, 18

*In re Idearc, Inc.*
442 B.R. 513 (N.D. Tex. Bankr. 2010) ................................................... 13, 14

*In re Pace Airlines, Inc.*,
483 B.R. 306 (M.D. N.C. Bankr. 2012) ........................................................ 19

*In re Powermate Holding Corp.*
394 B.R. 795 (N.D. Ala. Bankr. 2009) ........................................................ 19

*Staudt v. Glastron, Inc.*,
92 F.3d 312 (5th Cir. 1996(citing 29 U.S.C. § 2104) ............................ 15, 16

**Rules and Statues .......................................................................Page(s)**

20 C.F.R. § 639.1(a)...........................................................................5

20 C.F.R. § 639.7 ...............................................................................6

20 C.F.R. § 639.9 ...............................................................................6

11 U.S.C. § 104..................................................................................12

11 U.S.C. § 503(b)(1)(a) ....................................................................12

11 U.S.C. § 507(a)(3)..........................................................................18

11 U.S.C. § 507(a)(4)............................... 2, 8, 10, 11, 12, 13, 14, 17, 18, 19, 20, 21

29 U.S.C § 2101...................................................................................5

29 U.S.C. § 2102..................................................................................10

29 U.S.C. § 2102(a) ............................................................................3

29 U.S.C. § 2102(b)(2).........................................................................6

29 U.S.C. § 2102(b)(3).........................................................................6

29 U.S.C. § 2102(b)(1).........................................................................6

29 U.S.C. § 2104(a)(1)....................................................................10, 15

**Other ....................................................................................Page(s)**

*S.Rep.No.* 62 100th Cong., 1st Sess. 24 (1987)............................................ 16

## JURISDICTIONAL STATEMENT

This is an appeal pursuant to Fed.R.App.P. 6(a) from a Memorandum Opinion and Order entered by the United States District Court for the Northern District of Mississippi on March 26, 2026, affirming the Memorandum Opinion and Order on Priority WARN Act Damages entered by the Bankruptcy Court on June 6, 2025. The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157.

## STATEMENT OF THE ISSUES

The issue on appeal is whether the District Court erred in concluding that WARN Act damages for "back pay" are entitled to priority as "earned" wages or severance under 11 U.S.C. § 507(a)(4).

## STATEMENT OF THE CASE

### A. UFI's Shut-Down and Bankruptcy

United Furniture Industries, Inc. ("UFI") and its affiliated companies were in the business of manufacturing and distributing furniture from facilities located in Mississippi, California and North Carolina. ROA.473. On November 21, 2022, UFI abruptly ceased operations and terminated its workforce of approximately 2,700 employees. ROA.473. Following the shut-down, UFI sent WARN notices to its employees which included information about their terminations.[2] On November 25, 2022, UFI funded its final payroll which covered all employee wages for services rendered through the termination date. ROA.198.

Within days of the shut-down, several class-action lawsuits were filed by former employees alleging that UFI violated the WARN Act's 60-day advance notice requirement, 29 U.S.C. § 2102(a). ROA.474. Then, on December 30, 2022, multiple creditors filed an involuntary bankruptcy petition against UFI in the United States Bankruptcy Court for the Northern District of Mississippi. *See generally*, N.D. Miss. Bankr. Case No. 22-13422. The Bankruptcy Court eventually converted the action to a Chapter 11 case and appointed Derek Henderson as the Chapter 11

[2] *See* Doc. 109-1; Doc. 109-2 & Doc. 109 in N.D. Miss. Bankr. Adv. Pro. 23-01005. In addition to the materials in the record, this Court may also take judicial notice of and consider the publicly available records of the inferior courts that presided over the prior proceedings. *See In re Deepwater Horizon*, 934 F.3d 434, 440 (5th Cir. 2019).

trustee. ROA.473. Early on in the Chapter 11 case, the Bankruptcy Court authorized the trustee to pay certain pre-petition employee benefits, such as health and disability insurance premiums. ROA.198-99.

After UFI entered bankruptcy, the WARN Act class-action lawsuits were re-filed as adversary proceedings. ROA.474. The Bankruptcy Court eventually consolidated the adversary proceedings into single case, *Neal v. UFI*, N.D. Miss. Bankr. Adv. P. 23-01005, and certified the former employees' claims as a class action.[3]

The operative class action Complaint initially named only UFI. However, it was later amended to include the so-called "Non-UFI Defendants," Stage Capital, LLC, the David A. Belford Separate Property Trust and David A. Belford, as potentially liable parties under the "single-employer" theory of WARN liability.[4]

On March 24, 2024, the Bankruptcy Court confirmed UFI's proposed Plan of Liquidation ("Plan"), established a Liquidating Trust and appointed Henderson as the Liquidating Trustee. ROA.474. Generally speaking, the Plan authorizes the

---

[3] ROA.474. The Bankruptcy Court certified a class for the federal WARN Act claims as well as subclasses for former employees in California, Mississippi and North Carolina who were also pursuing state law wage and hour claims. *See* Doc. 97 in Adv. P. 23-01005.

[4] ROA.474. For context, the Belford Trust was the majority shareholder/owner of UFI. Mr. Belford is the Grantor and Trustee of the Belford Trust. As Trustee of the Belford Trust, Mr. Belford was UFI's sole voting shareholder. Stage Capital is the family office management company for the Belford Family. Mr. Belford is chairman and sole owner of Stage. ROA.474; ROA.197.

trustee to continue administering the estate and to contest unliquidated disputed claims. ROA.474. The Plan classifies the "WARN Act and Related Employment Claims" as "Disputed Claims" (Class 4) and provides that resolution of the WARN Class Action will determine (i) whether the such Claims are Allowed, and (ii) if so, whether and to what extent they will be treated as priority wage claims or general unsecured claims. ROA.474.

### B. WARN Act Litigation

The WARN Act requires employers to give 60-days written notice to employees in advance of a mass lay-off or plant closing. An employer may be liable for up to 60 days of back pay and benefits to employees who lose their jobs as part of a plant closing or mass layoff without receiving the required notice. *See* 29 U.S.C § 2101 and 20 C.F.R. § 639.1(a).

There is no dispute that UFI's shut-down violated the WARN Act. The shut-down resulted in multiple plant closures across three states and the mass-layoff of approximately 2,700 employees. ROA.197. UFI first notified its employees about their terminations on the same day it ceased operations, and thus, it did not comply with the 60-day notice requirement. ROA.198.

There are two (2) relevant exceptions to the 60-day notice requirement. An employer may give reduced notice if the plant closing or mass layoff was due to business circumstances which were not reasonably foreseeable at the time the 60-

day notice would have been required. 29 U.S.C. § 2102(b)(2). The notice period may also be reduced under the "faltering company" exception. This exception applies if, at the time notice would have been required, the employer was actively seeking capital, which if obtained, would have avoided the shutdown, and the employer reasonably and in good faith believed that giving earlier notice would have precluded it from obtaining the needed capital to stay in business. *See* 29 U.S.C. § 2102(b)(1).

On October 18, 2024, the Bankruptcy Court ruled that the WARN notices disseminated by UFI did not contain sufficient information about the reason for late notice, and thus, the defendants could not invoke the statutory exceptions as affirmative defenses.[5] The effect of this ruling was essentially a default judgment as to WARN liability. ROA.475. In a subsequent ruling the Bankruptcy Court denied cross-motions for summary judgment on the "single-employer" liability issue. ROA.475.

Prior to trial, the parties stipulated to a computation of WARN damages in the amount of $19,371,126. This figure was calculated by assessing 60 days of pay for the each of the affected employees based on the applicable daily wage rates and

[5] ROA.475. In addition to the required contents set forth in 20 C.F.R. § 639.7, the notice must also contain a "brief statement of the reason for reducing the notice period." 29 U.S.C. § 2102(b)(3); 20 C.F.R. § 639.9. An employer may not invoke the statutory exceptions as affirmative defenses to WARN liability if its notice lacks an adequate "brief statement."

including an additional amount for the cost of their health care benefits. ROA.101-02; ROA.111-12. The parties also stipulated that, for the sub-class of California employees who had state law claims for unpaid vacation (paid time-off), the aggregate amount of these damages was $73,522. ROA.102. The stipulation expressly provided that it did not concern or resolve whether WARN Act damages were entitled to priority treatment under the Plan and left that question open for the Bankruptcy Court to decide later after trial. ROA.102-03.

A few days before the start of the trial, class counsel announced that a settlement had been reached with the Non-UFI Defendants. ROA.268. In exchange for a release and dismissal of all claims, the Non-UFI Defendants agreed to pay $3.5 million dollars into a settlement fund for the class. *See* Doc. 1348-1 in N.D. Miss. Bankr. Case 22-13422.

Shortly thereafter, the trustee and class counsel entered into a separate settlement agreement whereby the trustee agreed to give the class an "Allowed Claim" in the amount of $15,000,000 for WARN Act damages to be administered under the Plan after the Bankruptcy Court decided the priority issue and all appeals were exhausted. *See* Doc. 1348-2 in N.D. Miss. Bankr. Case 22-13422. Also, because this was a fully vested, pre-petition benefit, the trustee agreed to give the California sub-class a priority wage claim for their unpaid vacation in the aggregate amount of $73,522. *Id.* After notices and hearings, the Bankruptcy Court approved

both settlement agreements. *See* Dkt. 1394 & Dkt. 1402 in N.D. Miss. Bankr. Case 22-13422.

As a result of the settlements, the only remaining issue before the Bankruptcy Court was whether the Allowed Claim for WARN Act damages is entitled to priority under § 507(a)(4) of the Bankruptcy Code which grants fourth-level priority to allowed unsecured claims, capped at $15,150 per individual, for “wages, salaries, or commissions, including vacation, severance and sick leave” earned within the earlier of 180 days before the petition date or when the debtor’s ceased operations. ROA.268-69. The parties submitted briefs on this issue to the Bankruptcy Court. The trustee took the position that WARN Act damages do not constitute “earned” wages or severance, and thus, the Allowed Claim should be administered as a general unsecured claim under the Plan. ROA.269. The class took the contrary position that WARN damages function as “substitute” wages or severance pay, and thus, the Allowed Claim should be entitled to priority treatment, subject to the statutory cap. ROA.269.

In a Memorandum Opinion and Order dated June 6, 2025, the Bankruptcy Court ruled that WARN damages should be afforded priority status. ROA.266. On appeal, the District Court affirmed the Bankruptcy Court’s ruling. ROA.473. From this ruling, the trustee timely filed a Notice of Appeal to this Court. ROA.486.

As the District Court noted in its Opinion, the resolution of the priority issue is critically important in determining how this estate will be liquidated. ROA.476. If WARN Act damages are entitled to priority, then the Allowed Claim of $15,000,000 will be administered as a fourth level priority under the Plan and will likely consume all available funds in the estate after payment of administrative expenses. If not, then the Allowed Claim will be treated as a general unsecured claim along with the claims of UFI's other unsecured creditors which exceed $100 million dollars in the aggregate. *See* Doc. 1348-3 in N.D. Miss. Bankr. Case 22-13422.

## SUMMARY OF THE ARGUMENT

The WARN Act mandates that an employer provide 60 days' notice before ordering a plant closing or mass lay-off. 29 U.S.C. § 2102. If an employer violates this notice requirement, aggrieved employees may sue to recover back pay and benefits for a period "up to a maximum of 60 days." 29 U.S.C. § 2104(a)(1).

Section 507(a)(4) of the Bankruptcy Code grants priority status to "earned" wages, including employment benefits such as severance, vacation and sick leave. Although the term "back pay" as used in the WARN Act generally connotes a lost wages concept, this does not end the inquiry. The question is not simply whether WARN Act damages resemble "wages" but rather whether they constitute "earned" wages as required by § 507(a)(4).

The Bankruptcy Code does not define the term "earned" as used in § 507(a)(4) to describe wages and other related employment benefits. Likewise, there is no binding authority which addresses the interpretation of this provision in the context of WARN Act damages.

Consistent with the rule that bankruptcy preferences must be "clearly authorized" and "tightly construed," the trustee maintains that the term should be interpreted according to its plain and ordinary meaning—that is, wages are "earned" when actual services are rendered. Because UFI's employees did nothing to "earn"

WARN Act damages through the performance of past services, the Allowed Claim is not entitled to priority under § 507(a)(4).

Disagreeing with Trustee's position, the Bankruptcy Court and the District Court adopted an extremely broad interpretation of § 507(a)(4) that extends priority treatment beyond wages that are actually earned to include wages that are "constructively" earned through the imposition of statutory damages for a WARN Act violation. As the primary basis for their reasoning, both courts relied on a line of bankruptcy court cases which force the round-peg of WARN Act damages into the square hole of § 507(a)(4) by analogizing an employer's liability for WARN damages to a quasi-contractual obligation comparable to privately negotiated severance that is "earned" upon termination. However, this strained rationale should be rejected because it is not faithful to a "tight construction" of § 507(a)(4) and is at odds with this Court's recent characterization of WARN Act damages as "equitable restitution."

## ARGUMENT

### A. The Priority for "Earned" Wages and Benefits under § 507(a)(4) of the Bankruptcy Code

As this Court has stated, "[t]he absolute starting point for interpreting a statute is language of the statute itself." *Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dept. Stores, Inc.*, 15 F.3d 1275, 1282 (5th Cir. 1994). Section 507(a)(4) of the Bankruptcy Code establishes a fourth-level priority for allowed unsecured claims for unpaid wages, salaries, commissions, severance pay, and other forms of employee compensation that are "earned" within 180 days before the petition date or the date of the cessation of the debtor's business, whichever occurs first.[6] Priority status under § 507(a)(4) is subject to certain monetary caps that fluctuate every 3 years to reflect changes in the Consumer Price Index. *See* 11 U.S.C. § 104. Thus, as noted by the courts below, to the extent an individual class member's claim exceeds relevant cap amount of $15,150, the excess is a general unsecured claim and not entitled to priority. *See* ROA.267.

In contrast to § 507(a)(2), which grants a second-tier administrative priority to wages for services rendered post-petition *after* the bankruptcy case begins,[7]

[6] 11 U.S.C. § 507(a)(4). The 180-day time period is not particularly relevant to this appeal. If this Court accepts the proposition that UFI's former employees "earned" WARN Act back pay damages when UFI ceased operations and terminated them without 60 days' notice on November 21, 2022, then obviously, there would be no need to look back any further than this date.

[7] *See* 11 U.S.C. § 503(b)(1)(a).

Section 507(a)(4) grants a lower-level priority to wages "earned" pre-petition *before* the case begins. Thus, it is clear from the statutory scheme that Congress did not intend to give all wage claims equal status. In enacting § 507(a)(4), Congress intended to protect employees of financial distressed companies who might find themselves continuing to work in the lead-up to a bankruptcy filing and do not receive their full compensation package. *See In re First Mangus Financial Corp.*, 390 B.R. 667, 678 (D. Az. Bankr. 2008). This priority was designed "to ensure that such employees would get paid for their work prior to their employer's general unsecured creditors." *In re Idearc, Inc.,* 442 B.R. 513, 521 (N.D. Tex. Bankr. 2010).

It is undisputed that, except for $73,522 owed to the California sub-class for unpaid vacation, UFI's former employees have been paid in full for all wages and benefits that were actually "earned" as of the termination date. As part of the class-action settlement, the trustee has agreed that the unpaid vacation component is an "earned" benefit under California law, and thus, is entitled to priority status under § 507(a)(4).

Thus, the question presented by this appeal is whether the $15,000,000 "Allowed Claim" designated in the settlement agreement as WARN Act damages constitutes "earned wages" with the meaning of § 507(a)(4) even though the former employees did not perform any contemporaneous services in exchange for this right.

This question raises an issue of law that is reviewed *de novo* by this Court. *See Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 517 (5th Cir. 2004).

### 1. The Plain and Ordinary Meaning of "Earned Wages"

Looking first to the statute itself, the Bankruptcy Code does not define the term "earn" or the term "wages." *See In re Creative Hairdressers, Inc.*, 637 B.R. 561, 564-65 (D. Md. Bankr. 2021), *aff'd, Olsen v. Nesse*, 2022 WL 17404968 at *3-4 (D. Md.2022). Thus, when interpreting these terms, courts have applied their plain and ordinary meanings such that an employee is deemed "to earn wages within the meaning of Code § 507(a)(4) at the time services are performed." *Idearc,* 442 B.R. at 520; *see also Creative Hairdressers,* 637 B.R. at 566 (noting that, in the context of wages and other forms of employee compensation, "earn" means "to receive as equitable return for work or services rendered").

### 2. Priorities Must be "Tightly Construed

As the United States Supreme Court has indicated, "preferential treatment of a class of creditors is in order only when clearly authorized by Congress." *Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 547 U.S. 651, 655 (2006). If one claimant is to be preferred over other claimants, the purpose should be clear from the statute. *Howard*, 547 U.S. at 667. Thus, in interpreting the priority conferred by § 507(a)(4), courts must be guided "by the equal distribution objective underlying the Bankruptcy Code, and the corollary principle that provisions allowing

preferences must be tightly construed." *Id.* To give priority to a class of claimants not clearly entitled thereto based on a broad construction of the Code, "is not only inconsistent with the policy of equal distribution," it "reduces the funds available to general unsecured creditors and may diminish the recovery of other claimants qualifying for equal or lesser priorities." *Id.*

**B. The Remedy Provided by the WARN Act**

The exclusive remedy for violation of the WARN Act's 60-day notice requirement is a civil action for statutory damages and attorney's fees. *Staudt v. Glastron, Inc.*, 92 F.3d 312, 314 (5th Cir. 1996(citing 29 U.S.C. § 2104). Aggrieved employees are due back pay and benefits for each day of violation up to a maximum of 60 days. 29 U.S.C. § 2104(a). However, the court retains the discretion to reduce the award of statutory damages if the employer proves it had a reasonable, good faith belief that its actions did not constitute violation. *Id.*

In *Carpenter*, this Court addressed whether the 60-day period of statutory damages should be calculated based on calendar days or work days. *Carpenter*, 15 F.3d at 1283. The Court began its analysis by noting that the term "back pay" as used in the WARN Act connotes "wages, benefits, etc. that an employee *would have earned*, or to which she would have otherwise been entitled if the event that affected such job related compensation had not occurred. . . .." *Id.* (emphasis added). However, the Court also acknowledged that "a WARN Act claim is not true claim

for back pay because it does not compensate for past services . . ..” *Id*. at 1284. As quoted in the opinion, the Senate Report characterized the statutory remedy in the WARN Act as “a liquidated damages provisions [sic], designed to penalize the wrongdoing employer, deter future violations and facilitate simplified damages proceedings.” *Id.* (*quoting* S.Rep.No. 62, 100th Cong., 1st Sess. 24 (1987)).

In *Staudt*, 92 F.3d at 314, this Court addressed which “analogous” state law statute of limitations should apply in a WARN action. To make this determination, the Court had to “first ‘characterize the essence’ of a WARN action and then determine which state action is closest to it.” *Id.* After re-examining the WARN Act and its prior opinion in *Carpenter*, the Court noted that, although it had some attributes of both, a WARN action was “not particularly analogous” to either a tort claim or a claim for breach of contract. *Id.* at 316. Ultimately, the Court found it unnecessary to decide which one was “closest” because the WARN Act claim at issue was timely under either limitations period. *Id.*

Noting that *Staudt* had left open what analogy might apply to a WARN action, this Court more recently revisited the issue in *Fleming v. Bayou Steel BD Holdings II, LLC,* 83 F.4th 278, 289 (5th Cir. 2023). In *Fleming*, the Court addressed whether WARN plaintiffs have a Seventh Amendment right to a trial by jury. *Fleming,* 83 F.4th at 289. Because the Seventh Amendment only extends to statutory causes of

action which concern "legal" as opposed to "equitable" rights, this was the framework for the Court's analysis. *Id.*

After examining the essential character of a WARN action and the nature of the statutory remedy provided, the Court ultimately held that the WARN Act carries no right to a jury trial. *Id.* Excluding analogies to "legal" claims, the Court ruled that a WARN action is more analogous to an equitable cause of action for breach of fiduciary duty and that the statutory remedy for a violation of the notice requirement is in the nature of "equitable restitution." *Id.* at 289-90.

The Court specifically rejected the plaintiffs' attempt to analogize a WARN action to a quasi-contract claim. According to the Court, this analogy "breaks down" because the plaintiffs had done nothing to earn WARN damages upon termination, and contrary to being vested employment benefits, such damages are entirely within the discretion of the court. *Id.* at 290.

### C. WARN Damages Are Not Entitled to Priority under § 507(a)(4)

Because the plain and ordinary meaning of "earned wages" connotes pay or benefits for actual services rendered, WARN damages do not clearly fall within the priority established by § 507(a)(4). The courts below adopted an extremely broad interpretation of § 507(a)(4) in concluding that, because WARN Act damages for back pay resemble wages, then such damages are constructively "earned" upon termination in lieu of notice. ROA.483.

This strained rationale should be rejected by this Court because it is not faithful to a "tight construction" of § 507(a)(4). *See Howard,* 547 U.S. at 667. To give the federal WARN class priority for "constructively" earned wages "is not only inconsistent with the policy of equal distribution," it will deplete any funds that would otherwise be available for UFI's general unsecured creditors and diminish the recovery of the California sub-class which has a fourth level priority claim for unpaid vacation actually earned.

As the primary basis for their reasoning, the courts below relied on a line of bankruptcy court cases which can be traced back to *In re Cargo, Inc*., a case decided in 1992 by a bankruptcy court in Iowa. In *Cargo*, the bankruptcy court reasoned:

> WARN does not provide for punitive damages or liquidated damages. The only recovery is for the loss of notice upon termination.
>
> Given the purposes of the WARN Act, I conclude that it is remedial not punitive in nature. The 'back pay' liability of the employer is comparable to privately negotiated severance pay. It is severance pay in lieu of notice, imposed by statute. *It is a 'quasi-contractual' obligation.* As a statutorily imposed form of severance pay, it is 'wages' within the meaning of § 507(a)(3) [the prior version of § 507(a)(4)].

138 B.R. 923, 927 (N.D. Iowa Bankr. 1992)(internal citations omitted; emphasis added). As to the trustee's objection that the "back pay" was not earned, the court reasoned that, because such damages are owed in lieu of notice, they are "earned" upon termination. *Cargo,* 138 B.R. at 927.

As noted by the District Court [ROA.478], other bankruptcy courts have adopted *Cargo's* rationale, but none of these cases are binding. *See, e.g. In re Pace Airlines, Inc.*, 483 B.R. 306, 311 (M.D. N.C. Bankr. 2012); *In re Powermate Holding Corp.*, 394 B.R. 795, 805 (N.D. Ala. Bankr. 2009). Moreover, none of these cases provide a thoughtful analysis of the statutory text or the "quasi-contract" analogy espoused in *Cargo.*

Attempting to add heft to a so-called "overwhelming consensus" of authority [ROA.479], the District Court cited *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451 (2017) for the proposition that the Supreme Court has tacitly confirmed that WARN damages are entitled to priority under § 507(a)(4). ROA.479. In *Jevic*, the Supreme Court held that, absent the affected creditor's consent, a bankruptcy court may not approve a distribution scheme that violates the Bankruptcy Code's priority structure. *Jevic*, 580 U.S. at 471. The distribution scheme at issue was a "structured dismissal" that permitted payment to general unsecured creditors ahead of former employees holding WARN Acts claims. *Id.* at 455. In describing the nature of the dispute and framing the issue, the Supreme Court made the following statement, which is plainly dicta:

> The Bankruptcy Court granted summary judgment for petitioners against Jevic, leaving them . . . with a judgment [for WARN damages] that petitioners say is worth $12.4 million. Some $8.3 million of that judgment counts as a priority wage claim under 11 U.S.C. § 507(a)(4), and is

> therefore entitled to payment ahead of general unsecured claims against the Jevic estate.

*Id.* at 459.

The District Court agreed with the Bankruptcy Court's conclusion that *Jevic* "implicitly affirms the treatment of WARN Act damages as priority wage claims." ROA.273; ROA.480. However, *Jevic's* precedential value on this point is dubious because, as acknowledged by both courts below, the Supreme Court did not discuss or directly address why the WARN Act claims were entitled to priority. The Supreme Court did not cite any case law or provide any in depth analysis to support its statement regarding the priority of WARN damages. Thus, it appears that the Court was simply making an assumption based on the parties' framing of the issue solely to examine the impact of the structured dismissal. Because the priority classification of WARN damages was an assumption, rather than a litigated issue, the courts below erred in treating *Jevic* as a reliable endorsement of *Cargo* and its progeny.

*Cargo*'s reasoning is flawed and is inconsistent with this Court's observations regarding the nature of a WARN action. In *Cargo*, the bankruptcy court concluded that the WARN Act is remedial and does not provide for liquidated damages. *Cargo*, 138 B.R. at 927. However, in *Carpenter*, this Court quoted from the Senate Report which characterized the damages provision of the WARN Act as a liquidated damages provision designed to penalize the wrongdoing employer. *Carpenter*, 15

F.3d at 1284. Viewed in this light, as a form of "liquidated damages," WARN damages simply cannot be classified as "earned" wages for purposes of § 507(a)(4). *See Creative Hairdressers*, 637 B.R. at 565-66.

In *Creative Hairdressers*, the employer delayed paying wages owed to its employees because of the impact of the COVID-19 novel coronavirus. *Id.* at 562. However, the employees were ultimately paid soon after the debtor's bankruptcy filings. *Id.* Nevertheless, the plaintiffs filed a class action claiming that the delay in payment entitled them to liquidated damages under the Fair Labor Standards Act and that such damages were entitled to priority under § 507(a)(4). *Id.*

Applying the plain and ordinary meaning of the term "wages" and keeping in mind that § 507(a)(4) must be narrowly construed, the court concluded that FLSA liquidated damages are awarded as reparations for the failure pay wages timely; they are not "earned" as "equitable return for work done or services rendered." *Id.* at 566. This same logic should apply with equal force to deny priority wage status to WARN damages which are awarded as reparations for the failure to give 60-days advance notice.

In *Cargo*, the bankruptcy court relied on a quasi-contract analogy in concluding that WARN damages are a statutorily imposed form of severance pay that is comparable to privately negotiated severance pay and "earned" upon termination in lieu of notice. *Cargo*, 138 B.R. 923, 927. This conclusion

fundamentally misconstrues the statutory text, purposes and boundaries of § 507(a)(4) because it equates, without any meaningful analysis, an award of statutory damages with unpaid severance that has been "earned" as part of an employee's bargained for compensation package.

Even if there were a logical basis for this comparison, this Court expressly rejected the quasi-contract analogy in *Fleming*. This Court's conclusion that WARN Act damages are in the nature of "equitable restitution" completely undermines the rationale that *Cargo* and other courts have used to characterize WARN damages as wages or severance "earned" upon termination. The courts below erred in declining to follow *Fleming's* logic because the classification of WARN Act damages as "equitable restitution" for jury trial purposes applies with equal force to assessing priority status under § 507(a)(4).[8] Both issues turn on the essential nature of a WARN Act claim and the type of remedy it provides.

Simply put, Section 507(a)(4) cannot and should not interpreted in a manner that equates a statutory damages award for "equitable restitution" with an award for "earned" wages or severance. This is a bridge too far and would frustrate the principle of equality of distribution.

---

[8] As a restitution judgment, WARN damages would fall outside of § 507 because the statute contains no such express priority. *See In re Bennett,* 237 B.R. 918, 923 (N.D. Bankr. Tex. 1999).

## CONCLUSION

For the foregoing reasons, this Court should reverse the District Court's ruling and render judgment in the Trustee's favor that the Allowed Claim for WARN Act Damages is not entitled to priority under 11 U.S.C. § 507(a)(4).

**RESPECTFULLY SUMBMITTED** this the 16th day of June, 2026.

**DEREK A. HENDERSON**
**Liquidating Trustee**

By: *<u>/s/ W. Thomas McCraney, III</u>*
W. Thomas McCraney, III

<u>**OF COUNSEL:**</u>

W. Thomas McCraney, III, MS Bar No. 10171
Douglas C. Noble, MS Bar No. 10526
MCCRANEY MONTAGNET QUIN & NOBLE, PLLC
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Telephone: (601) 707-5725
Facsimile: (601) 510-2939
tmccraney@mmqnlaw.com
dnoble@mmqnlaw.com

Anna Claire Henderson, MS Bar No. 106230
1765-1 Lelia Drive, Suite 103
Jackson, Mississippi 39216
annaclaire@derekhendersonlaw.com

## CERTIFICATE OF SERVICE

I, do hereby certify that I have this date served *via* CM/ECF which provides electronic notice all parties of record, a true and correct copy of the above and foregoing Appellant's Brief.

**RESPECTFULLY SUMBMITTED** this the 16th day of June, 2026.

**DEREK A. HENDERSON**
**Liquidating Trustee**

By: *__/s/ W. Thomas McCraney, III__*
W. Thomas McCraney, III

**OF COUNSEL:**

W. Thomas McCraney, III, MS Bar No. 10171
Douglas C. Noble, MS Bar No. 10526
MCCRANEY MONTAGNET QUIN & NOBLE, PLLC
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Telephone: (601) 707-5725
Facsimile: (601) 510-2939
tmccraney@mmqnlaw.com
dnoble@mmqnlaw.com

Anna Claire Henderson, MS Bar No. 106230
1765-1 Lelia Drive, Suite 103
Jackson, Mississippi 39216
annaclaire@derekhendersonlaw.com

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1, this document contains 5,004 words.

This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font 14-point type face.

**RESPECTFULLY SUMBMITTED** this the 16th day of June, 2026.

**DEREK A. HENDERSON**
**Liquidating Trustee**

By: *<u>/s/ W. Thomas McCraney, III</u>*
W. Thomas McCraney, III

**<u>OF COUNSEL:</u>**

W. Thomas McCraney, III, MS Bar No. 10171
Douglas C. Noble, MS Bar No. 10526
MCCRANEY MONTAGNET QUIN & NOBLE, PLLC
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Telephone: (601) 707-5725
Facsimile: (601) 510-2939
tmccraney@mmqnlaw.com
dnoble@mmqnlaw.com

Anna Claire Henderson, MS Bar No. 106230
1765-1 Lelia Drive, Suite 103
Jackson, Mississippi 39216
annaclaire@derekhendersonlaw.com